751 N.W.2d 657 (2008)
16 Neb. App. 731
Richard H. BOXUM, appellant,
v.
Sherry L. MUNCE and Harry J. Munce, appellees.
No. A-07-522.
Court of Appeals of Nebraska.
June 3, 2008.
*658 Wayne E. Griffin, North Platte, for appellant.
Tim W. Thompson and Angela R. Shute, of Kelley, Scritsmier & Byrne, P.C., North Platte, for appellees.
SIEVERS, MOORE, and CASSEL, Judges.
SIEVERS, Judge.
The district court for Lincoln County, Nebraska, granted summary judgment to the defendants, Sherry L. Munce and Harry J. Munce, husband and wife, who had *659 been sued by Richard H. Boxum upon a guaranty of payment executed by the Munces on February 6, 2002. The district court found that the 3-month statute of limitations in which to collect a deficiency after foreclosure of a trust deed, found in Neb.Rev.Stat. § 76-1013 (Reissue 2003), barred Boxum's lawsuit. This matter is a case of first impression, and we address the scope and reach of the statute of limitations provision in § 76-1013.

FACTUAL AND PROCEDURAL BACKGROUND
The Munces are the mother and stepfather of David S. Carl. In the fall of 1997, David and his wife, Teena R. Carl, were attempting to buy certain real estate located on West 4th Street in North Platte, Nebraska, which they intended to modify for a daycare business. The sellers of that real estate were Kelly B. Smith and Jo F. Smith, who agreed to "carry back" most of the purchase price. As a result, the Carls executed and delivered their "Promissory Note with Balloon" to the Smiths with the original principal amount of $55,031.88 secured by a deed of trust on the West 4th Street property. Boxum loaned the Carls $14,000 in order that the Carls could complete the purchase from the Smiths, plus another $9,000 with which the Carls were going to modify the property. Such loans were ultimately evidenced by the Carls' promissory note to Boxum in the amount of $28,500 executed and delivered on October 1, 1999. The difference between the amounts loaned and the amount of the promissory note was apparently accrued interest. Such promissory note was secured by a deed of trust on the West 4th Street property. For convenience and clarity, we will refer to the first-described promissory note as the "Carl-Smith note" and the second as the "Carl-Boxum note."
By early 2002, the Carls were delinquent on their payments to the Smiths, who had elected to declare a default and foreclose on the deed of trust given by the Carls to the Smiths. In order to avoid such foreclosure, the Munces apparently sought the assistance of Boxum. As a result, Boxum agreed to pay off the obligation due the Smiths in return for an assignment of the Carl-Smith note to him. As further inducement for Boxum to pay off the Carls' debt to the Smiths, the Munces agreed that they would guarantee payment of the obligations represented by the Carl-Smith note as well as the Carl-Boxum note. We note that we do not have before us, nor did the district court, the deed of trust from the Carls to Boxum. But from other undisputed evidence such as Boxum's affidavit, we know that the only obligation secured by such deed was the Carl-Boxum note.
Accordingly, on January 29, 2002, Boxum paid off the obligation due the Smiths in the amount of $40,623.65. In return, Boxum received an assignment of the Carl-Smith note of October 1, 1997, as well as an assignment of the corresponding deed of trust. On February 6, 2002, the Munces signed and delivered to Boxum their guaranty of payment with respect to the Carl-Smith note and the Carl-Boxum note.
After receiving the guaranty, Boxum received irregular payments from the Carls, and by mid-December 2003, the Carls had filed a chapter 7 bankruptcy case in the U.S. Bankruptcy Court for the Northern District of Oklahoma. That proceeding ultimately resulted in a discharge of the Carls on April 2, 2004which included discharge of both the Carl-Smith and the Carl-Boxum notes.
The successor trustee, under the Carl-Boxum deed of trust, gave notice of default on such note on May 12, 2004, indicating that the amount of the indebtedness as of May 10 was $44,258.87. It is noteworthy *660 that the notice of default, after reciting such amount, states that it "does not include any obligations secured by the subject property senior or junior to the said indebtedness secured by said Deed of Trust." The term "said deed of trust" clearly refers to the trust deed given by the Carls to Boxum. The trustee sold the property, and according to the trustee's deed dated November 15, 2004, the highest bid at the trustee's sale was Boxum's $10,000 bid. The evidence shows that this was the only bid. The trustee conveyed the West 4th Street property to Boxum "pursuant to the powers conferred by a Trust Deed with power of sale recorded on December 2, 1999, in Book 621, Pages 485-488, Records of Lincoln County, Nebraska." We note that in neither the notice of default nor the trustee's deed, exhibits 8 and 9 respectively, is there any specific mention whatsoever of the Carl-Smith note. And the notice of default of May 12, 2004, provides that the amount specified therein as owing "does not include any obligations secured by the subject property senior or junior to the said indebtedness secured by said Deed of Trust." Again, the reference to "said deed of trust" is clearly to the Carl-Boxum note. In short, the notice of default excludes the obligations represented by the Carl-Smith note.
On January 24, 2006, Boxum sued the Munces on their guaranty, seeking judgment against them in the amount of $97,116.21, which sum included interest calculated to December 31, 2005, and thereafter accruing at the rate of $25.40 per day. Attached to such complaint is the Munces' guaranty of payment and a recitation of the details of the Carl-Boxum note as well as the Carl-Smith note. The guaranty includes the recitation that the Munces "absolutely guarantee payment" to Boxum. Moreover, in the guaranty, the Munces acknowledged that both promissory notes were then in default and that each obligation was secured by a deed of trust on the West 4th Street property.
On October 31, 2006, the Munces filed their answer, in which they asserted that Boxum's action was filed out of time, given the 3-month limitation period in the Nebraska Trust Deeds Act. See Neb.Rev. Stat. §§ 76-1001 to 76-1018 (Reissue 2003). While other defenses such as lack of consideration for the guaranty of payment were alleged, the Munces' motion for summary judgment was premised solely upon the 3-month limitation found in § 76-1013, and such was the sole basis of the trial court's grant of summary judgment to the Munces. The motion for summary judgment was filed January 23, 2007, heard on April 16, and decided on April 24. The district court found that the matter was controlled by Sports Courts of Omaha v. Meginnis, 242 Neb. 768, 497 N.W.2d 38 (1993), that it was "clear that the action was filed outside of the three-month limitation period," and that as a result, the motion for summary judgment was sustained and the complaint dismissed. Boxum timely appeals.

ASSIGNMENT OF ERROR
[1] Restated and summarized, Boxum's assignment of error is simply that the district court erred in granting summary judgment to the Munces on the basis of the 3-month statute of limitations in the Nebraska Trust Deeds Act.

STANDARD OF REVIEW
[2] Our examination of the record reveals no material issue of disputed fact, but, rather, an issue of law involving statutory interpretation. The rule is well-established that to the extent an appeal calls for statutory interpretation, it represents a question of law, and an appellate court must reach an independent conclusion irrespective of the determination of the lower *661 court. See Hawkins v. City of Omaha, 261 Neb. 943, 627 N.W.2d 118 (2001).

ANALYSIS
Although we have previously referred to the 3-month statute of limitations a number of times, we now set forth the relevant statute, § 76-1013, which provides:

At any time within three months after any sale of property under a trust deed, as hereinabove provided, an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in such action the complaint shall set forth the entire amount of the indebtedness which was secured by such trust deed and the amount for which such property was sold and the fair market value thereof at the date of sale, together with interest on such indebtedness from the date of sale, the costs and expenses of exercising the power of sale and of the sale. Before rendering judgment, the court shall find the fair market value at the date of sale of the property sold. The court shall not render judgment for more than the amount by which the amount of the indebtedness with interest and the costs and expenses of sale, including trustee's fees, exceeds the fair market value of the property or interest therein sold as of the date of the sale, and in no event shall the amount of said judgment, exclusive of interest from the date of sale, exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured thereby, including said costs and expenses of sale.
(Emphasis supplied.)
We have emphasized that portion of the statute which is crucial in this appeal. However, we first turn to Sports Courts of Omaha v. Meginnis, 242 Neb. 768, 497 N.W.2d 38 (1993), relied upon by the trial court. While there are several other appellate decisions involving § 76-1013, they all generally involve the question of determining the fair market value of the property sold under a trust deed. Meginnis is the only case discussing the statute of limitations found in § 76-1013.
[3] Meginnis was tried on stipulated facts which revealed that Harry Meginnis and Tom Schuessler were shareholders in Tom-Har, Inc., and that Sports Courts of Omaha, Ltd. (Sports Courts), sold an Omaha sports fitness facility, including real estate, to Tom-Har for $600,000 reflected by a promissory note signed by Tom-Har, Schuessler, and Meginnis as comakers. The note was secured by a trust deed on the real estate involved in the sale. In August 1985, after Tom-Har failed to pay the note and had received Sports Courts' notice of default, the trustee, acting under the power of sale expressed in the trust deed, sold the real estate, but the proceeds were insufficient to pay the indebtedness on the underlying promissory note. While the Meginnis opinion traces a twisted path of litigation to attempt to collect the deficiency after the trust deed sale, we will not recite that history. It is sufficient for our purposes that the action to collect the deficiency in Meginnis was clearly filed more than 3 months after the trust deed sale. The Meginnis court initially recalled its decision in Blair Co. v. American Savings Co., 184 Neb. 557, 169 N.W.2d 292 (1969), which upheld the constitutionality of the Nebraska Trust Deeds Act. The Meginnis court reiterated its observation from Blair that the Nebraska Trust Deeds Act provides "a specific statutory plan to obtain performance of an obligation, prescribes a distinct procedure to dispose of security for performance of an obligation, and, generally, authorizes a form of financing quite apart from other methods recognized under Nebraska law." 242 Neb. at 774, 497 N.W.2d at 42. The Meginnis *662 court framed the issue of first impression it was deciding as, "Which statute of limitations, § 25-205 or § 76-1013, controls the time for commencement of an action to recover the balance due on the obligation secured by a deed of trust?" 242 Neb. at 774-75, 497 N.W.2d at 42-43.
[4,5] In answering this question, the Meginnis court set forth the well-known rule that when statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning, so that, in the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning. Additionally, the court found that "`[a] special statute of limitations controls and takes precedence over a general statute of limitations because the special statute is a specific expression of legislative will concerning a particular subject.'" Id. at 775, 497 N.W.2d at 43, quoting Murphy v. Spelts-Schultz Lumber Co., 240 Neb. 275, 481 N.W.2d 422 (1992). After referencing the key statutory language which we emphasized when we quoted the statute at the beginning of our analysis, the Meginnis court said that such language "unambiguously expresses that the 3-month statute of limitations applies to an action to recover a deficiency on any obligation, such as a promissory note or other contract, after sale of the real estate which secured the obligation pursuant to the Nebraska Trust Deeds Act." 242 Neb. at 775, 497 N.W.2d at 43. To us, the plain and unambiguous language from the statute which we have emphasized, as well as the foregoing quoted holding, requires that we reverse the district court's decision.
[6,7] The key to the issue before us is recognition that the 3-month limitation is applicable to a suit which seeks a deficiency judgment on a particular obligation that was secured by the particular trust deed that was foreclosed. The 3-month statute of limitations applies only when the suit for deficiency is on the obligation for which the foreclosed trust deed was given as security. This is not the factual situation in the present case.
Here, the evidence is undisputed that the trust deed which was used to foreclose on the West 4th Street property was a trust deed "filed for record on December 2, 1999, as Instrument No. 1599 108415, in Book 621, Page 485-488, Records of Lincoln County, Nebraska." This trust deed secures the Carl-Boxum note in the amount of $28,500 plus accrued interest. Therefore, under the plain language of § 76-1013, Boxum had 3 months from the date of the trustee sale, November 15, 2004, in which to seek a deficiency judgment on that obligation, the Carl-Boxum note. But, this lawsuit is obviously not a suit on the Carls' obligation to Boxum, which was secured by the trust deed that was foreclosed upon. Rather, this suit is upon a completely different and separate obligation of the Munces, entitled "Guaranty of Payment" and dated February 6, 2002, which "absolutely guarantee[s]" their payment of two obligations, the Carl-Boxum note and the Carl-Smith note, each of which was secured by a separate trust deed given by the Carls.
[8] Sports Courts of Omaha v. Meginnis, 242 Neb. 768, 775, 497 N.W.2d 38, 43 (1993), states that the 3-month statute of limitations "applies to actions to recover an amount owed `upon the obligation for which the trust deed was given as security.'" The fundamental difficulty with applying § 76-1013 to the instant lawsuit is that it is not an action to collect a deficiency on the obligation for which the foreclosed trust deed was given. The Carl-Boxum note is the obligation that the foreclosed trust deed securedand suit for collection of a deficiency on that obligation must be instituted within 3 months. But, this suit is on the Munces' guaranty *663 of payment, a completely separate and distinct obligation from the promissory note obligation given by the Carls to Boxum. As a security device, Boxum took a trust deed from the Carls, and it is this trust deed which was foreclosed. The fact that Boxum claims that there is still money owing on the Carl-Boxum note, which could be called a deficiency, is a "verbal happenstance in language" that is of no consequence because this action seeks to enforce the contract that the Munces made when they guaranteed payment of both the Carl-Boxum note and the Carl-Smith note. It is not a suit to collect a deficiency on the obligation secured by the foreclosed trust deed, but, rather, it is a suit to collect on a separate and different contractthe Munces' guaranty. Therefore, the applicable statute of limitations is that found in Neb.Rev.Stat. § 25-205 (Cum.Supp.2006), providing for a 5-year statute of limitations on an action on any agreement, contract, or promise in writing. In this regard, we point out that the Nebraska Supreme Court in Meginnis stated that it was "the obligation secured by a deed of trust, not the title to the security, [that] determines applicability or availability of the 3-month statute of limitations under § 76-1013." 242 Neb. at 775, 497 N.W.2d at 43. In this case, the "obligation" upon which a deficiency collection suit must be brought within 3 months of the foreclosure is the Carl-Boxum notenot the Munces' guaranty of payment of the Carls' obligation to Boxum.
The Meginnis court discussed how Meginnis assumed the obligation to pay the promissory note and, to ensure performance of that obligation, Sports Courts used the Nebraska Trust Deeds Act. But, importantly, Meginnis was a comaker and original obligor on the note. In the case before us, the Munces were not comakers of the note, as was Meginnis, and Boxum did not use the Nebraska Trust Deeds Act to secure the performance of the Munces' guarantybecause the Munces had no title and thus no trust deed to give.
[9] The essential nature of a guaranty as well as the obligation of a guarantor help clarify that the Munces stand in an entirely different position than do the Carls vis-a-vis Boxum, and, thus, the Munces are not entitled to the protection of the short statute of limitations under the Nebraska Trust Deeds Act, as were the Carls. The law is that the debtor is not a party to a guaranty, and the guarantor is not a party to the principal obligation; the undertaking of the debtor is independent of the promise of the guarantor and the responsibilities which are imposed by the contract of guaranty differ from those created by the contract to which the guaranty is collateral. National Bank of Commerce Trust & Sav. Assn. v. Katleman, 201 Neb. 165, 266 N.W.2d 736 (1978). See In re Estate of Williams, 148 Neb. 208, 26 N.W.2d 847 (1947).
Finally, we take note of the Munces' argument designated as "III," which asserts that because trust deeds are subject to the same rules and restrictions as mortgages, citing Blair Co. v. American Savings Co., 184 Neb. 557, 169 N.W.2d 292 (1969), the foreclosure of the junior deed of trust, from the Carls to Boxum, extinguishes the debt on the senior deed of trust and note, from the Carls to the Smiths, when the same person or entity holds both the junior and the senior debt as was true here. See Tri-County Bank & Trust Co. v. Watts, 234 Neb. 124, 449 N.W.2d 537 (1989). This claim was not presented to, or decided by, the district court, and hence we neither decide nor express any opinion thereupon.

CONCLUSION
For the foregoing reasons, we reverse the decision of the district court for Lincoln *664 County and find that the 3-month statute of limitations contained in § 76-1013 does not bar this lawsuit against the Munces on the guaranty they gave Boxum. This lawsuit was timely brought.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.